POLAK, Respondent, vs. POLAK, Appellant.

*January 10—March 12, 1946.*

George A. Bowman, attorney, and *Thomas E. Torphy* of counsel, both of Milwaukee, for the appellant.

For the respondent there was a brief by *Rubin, Zabel & Ruppa,* attorneys, and *William B. Rubin* and *W. C. Zabel* of counsel, all of Milwaukee, and oral argument by *Mr. Zabel.*

BARLOW, J.   The questions on this appeal are: (1) Is the finding of the trial court that no antenuptial or postnuptial agreement was entered into between the plaintiff and defendant sustained by the evidence? and (2) Did the trial court abuse its discretion in making a full and final division of property in lieu of alimony?

The material facts necessary to a determination of these issues are: Plaintiff and defendant were married in Milwaukee, August 29, 1942.   At that time plaintiff was sixty-two years of age.   He had four adult children born to his first wife, who died in 1939.   Plaintiff came to America from Czechoslovakia when he was twenty-seven years of age and has been a railroad employee at all times since arriving in this country.   At the time of his marriage to the defendant he owned two parcels of real estate in Milwaukee, one being the homestead which he purchased in 1919 for $6,500 and a second parcel purchased in 1927 for $13,000, on which there was an indebtedness of $2,000 at the time of this divorce action.   This

property was acquired by the joint earnings of plaintiff, his first wife, and the earnings of their children during their minority.   He owned some government bonds and had some cash, the amount of which is in dispute, a checking account, and a savings account.   He was earning about $170 a month and had income of $70 per month from the rented property.

Defendant, a widow, was forty-seven years of age.   She had two adult sons by her first marriage.   At the time of her marriage to plaintiff defendant had no property, and was employed as a cleaning woman earning $13 per week.   She continued this employment after her marriage.

Plaintiff met defendant about eight months prior to their marriage.   Shortly before their marriage, plaintiff expressed a willingness to provide for defendant by making a will, and they went to the office of an attorney at law who was suggested by relatives of the defendant.   No papers were drafted at that time, as the attorney suggested that they return after they were married.   About two weeks after their marriage they again went to the office of this attorney, who prepared a deed conveying the homestead to the defendant, and at the same time prepared two wills; one for the defendant, in which she bequeathed the property conveyed by the deed to her two sons by her former marriage, reserving in the plaintiff a life estate, provided they were still married and no suit for divorce had been commenced.   Plaintiff, in his will, bequeathed the remaining real estate to his four children, subject to an "estate in possession in and to the said real estate, together with all rents and profits therefrom, for a term which shall commence upon my death and shall terminate five years thereafter or upon the death of my wife, Anna Polak, prior to the expiration of said five years, which estate in possession I hereby give and devise to my said wife upon condition, however, that my said wife shall survive me, that the bonds of matrimony between myself and my said wife shall subsist at the time of my death and that no suit for divorce shall then be pending between myself and my said wife in any court."

The wills and deed were executed September 11, 1942. The will of the plaintiff contained a provision that paragraph II of the will "is made pursuant to one certain postnuptial agreement between myself and my said wife bearing date September —, 1942, and together with other pecuniary provisions in her favor which are set forth in said agreement has been made by myself and accepted by my said wife in lieu of any and all right of and claim to dower and homestead in any of my real estate, and to any share in my personal estate or other estate of any kind whatever." Likewise the will of defendant contained the following provision: "The provision made in paragraph I of this my last will and testament in favor of my husband, Frank Polak, is made pursuant to one certain postnuptial agreement between myself and my said husband bearing date September —, 1942." No such postnuptial agreement was ever executed between the parties.

At the close of the trial, the court dismissed plaintiff's complaint, granted an absolute divorce to the defendant on her counterclaim, and among other things adjudged that she receive no alimony; that as and for a full and final division of the estate and in lieu of alimony, both temporary and permanent, the defendant receive all the household furniture purchased by the plaintiff at or about the time of their marriage, together with her own personal belongings, and that the plaintiff pay to the clerk of court for the defendant the sum of $1,100, divesting the defendant of all right, title, and interest in and to the homestead property which the plaintiff deeded to her shortly after their marriage, and divesting her of any interest in bonds or bank accounts of the plaintiff. Defendant appeals from that portion of the judgment pertaining to the full and final division of the estate of the parties, the disallowance of alimony, and divesting defendant of property rights which she claims were vested in her.

Appellant contends that there was either a valid antenuptial or postnuptial agreement, pursuant to which the homestead was conveyed to the defendant, and with this true the

court had no authority to divest her of this property under sec. 247.26, Stats., which provides:

". . . and the court may finally divide and distribute the estate, both real and personal, of the husband and so much of the estate of the wife as shall have been *derived* from the husband, between the parties and divest and transfer the title of any thereof accordingly. . . ."

We hold that the trial court properly determined there was neither an antenuptial nor postnuptial agreement. It does not appear that there was any written agreement between the parties prior to the execution of the deed and the wills. The defendant testified that she agreed to marry the plaintiff wholly independent of the conveyance of the real estate in question. The conveyance of the homestead by the husband to his wife was not pursuant to any agreement made before or after the marriage unless it can be inferred from the deed from plaintiff to defendant and the execution of the two wills. The making of mutual wills does not sustain appellant's position. Mutual wills can be revoked. *Doyle v. Fischer* (1924), 183 Wis. 599, 198 N. W. 763. Joint or mutual wills may be revoked by either party at any time in the same manner as other wills. *In re Will of Sechler* (1937), 224 Wis. 613, 272 N. W. 854. The will executed by the defendant did not irrevocably bind her to waive her dower and homestead rights in real estate owned by plaintiff at his death. Defendant still had the right on the death of plaintiff to make her election under secs. 233.12, 233.13, and 233.14, Stats.

It is considered this property was derived from the husband, and could be finally divided by the court in this action as provided in sec. 247.26, Stats. We therefore do not reach the question of whether property acquired under a valid antenuptial or postnuptial agreement is derived from the husband, and do not decide it.

Defendant also contends that having in mind the legal and equitable rights of the parties hereto, the ability of the husband, the special estate of the wife, the character and situation

of the parties, and all the circumstances of the case, the award of $1,100 as a full and final settlement without alimony, and divesting the wife of any right in the property conveyed to her after marriage is manifestly unjust. Sec. 247.26, Stats., provides:

". . . and the court may finally divide and · distribute the estate, both real and personal, of the husband and so much of the estate of the wife as shall have been derived from the husband, between the parties and divest and transfer the title of any thereof accordingly, having always due regard to the legal and equitable rights of each party, the ability of the husband, the special estate of the wife, the character and situation of the parties and all the circumstances of the case. . . ."

It has frequently been held in this state that the division of property in such cases as this is a matter peculiarly within the discretion of the trial court, and that its determination must prevail in the absence of mistake or some manifest error respecting the detailed facts on which it rests, or disregard of established guides, amounting to a pretty clear want of judicial discretion or judgment. *Gauger v. Gauger* (1914), 157 Wis. 630, 147 N. W. 1075. Here the parties lived together less than a year, and the wife did not in any way assist in the accumulation of the plaintiff's property. The defendant receives the household goods purchased at or about the time of the marriage, for which approximately $400 was paid, and receives $1,100 in cash. In addition to this attorneys' fees of $250 for services in the trial court and $450 for services and expenses on this appeal were also allowed. The attorneys' fees in the trial of the case and on appeal may properly be considered by the trial court in determining the amount of award to be made in a divorce action. *Lewis v. Lewis* (1930), 201 Wis. 343, 230 N. W. 77. In making a final division of property between the parties to a divorce action the question is "What is fair and equitable?" Under all the circumstances it is considered that under the decisions in *Steinbach v. Steinbach* (1929), 200 Wis. 208, 227 N. W. 879; *Bruhn v. Bruhn*

(1928), 197 Wis. 358, 222 N. W. 242; *Kalbakken v. Kalbakken* (1929), 199 Wis. 501, 227 N. W. 11, the division of property made by the trial court was fair and equitable and should not be disturbed.

Plaintiff seeks a review of the allowance of $450 for attorneys' fees and appeal costs to defendant on appeal to this court, claiming they are excessive and the appeal is without merit. It is a rule that the court in its discretion may consider the relative financial condition of the parties and decline to charge the husband with the expenses of the wife's action or defense when due to the financial condition of the husband such charge would be inequitable. *Cudahy v. Cudahy* (1935), 217 Wis. 355, 258 N. W. 168; *Von Trott v. Von Trott* (1903), 118 Wis. 29, 94 N. W. 798; note to 35 A. L. R. 1099.

This cause was strenuously contested and defendant's right to a substantial interest in real estate is involved. At the time of the marriage plaintiff was worth net in excess of $20,000, using the purchase price of the real estate as its value. At the time the allowance was made for attorneys' fees and disbursements plaintiff had no dependents, was in good health, and had a substantial income. He was responsible for the termination of the marriage relationship. Substantial rights of the defendant were involved, and the trial court in its decision divested defendant of property rights which she claimed were legally vested in her. In making its decision, the trial court decided points of law which had not previously been passed upon by this court. It cannot be said that the defendant was not acting in good faith and that she did not have reasonable grounds to believe that the appeal would be successful. We conclude that under all the facts and circumstances the court properly ordered the plaintiff to pay the attorneys' fees and expenses on appeal, and that the sum of $450 was not excessive.

*By the Court.*—Judgment affirmed.